OPINION
{¶ 1} Defendant-appellant, Nicholas J. Schweitzer (hereinafter "Schweitzer"), appeals the judgment of the Auglaize County Court of Common Pleas finding him guilty of Aggravated Burglary, Felonious Assault and Possession of Criminal Tools and sentencing him to an aggregate term of fifteen years in prison.
 {¶ 2} Schweitzer's conviction and sentence stem from the following events. On May 11, 2004, Schweitzer's ex-girlfriend, Cortney Cox, was talking to her boyfriend, Sean Bowsher, in the driveway of her home when they observed Schweitzer drive up. Cox was frightened by Schweitzer's arrival, and she yelled for Bowsher to come inside the residence with her and away from Schweitzer. As Cox and Bowsher ran inside, Schweitzer exited his car and ran after them carrying a 10-inch buck knife. Schweitzer forced his way into the home by breaking the window on the door from the garage into the house. While Cox called 911, Bowsher struggled with Schweitzer. He attempted to keep Schweitzer away from Cox and to force Schweitzer back outside. During the struggle, Schweitzer stabbed Bowsher in the back piercing his lung. Auglaize County Sheriff's deputies arrived shortly thereafter and placed Schweitzer under arrest.
 {¶ 3} Schweitzer was later indicted on a total of five counts: one count of Aggravated Burglary in violation of R.C. 2911.11(A)(1), a felony of the first degree; one count of Felonious Assault in violation of R.C.2903.11(A)(2), a felony of the second degree; one count of Attempted Murder in violation of R.C. 2923.02(A) and 2903.02(A), a felony of the first degree; one count of Attempted Murder in violation of R.C. 2923.02(A) and 2903.02(B); and one count of Possession of Criminal Tools in violation of R.C. 2923.24(A), a felony of the fifth degree.
 {¶ 4} At arraignment on May 26, 2004, Schweitzer filed a motion claiming that he was incompetent to stand trial, and he entered a plea of not guilty by reason of insanity. A report from the Forensic Psychiatry Center of Western Ohio was filed with the court on July 2, 2004, and indicated that Schweitzer was competent to stand trial.
 {¶ 5} On September 17, 2004, Schweitzer withdrew his plea of not guilty by reason of insanity and on October 13, 2004, entered a plea of guilty to one count of Aggravated Burglary, a first degree felony, one count of Felonious Assault, a second degree felony, and one count of Possession of Criminal Tools, a fifth degree felony. The two counts remaining against Schweitzer were dismissed.
 {¶ 6} Schweitzer was sentenced December 10, 2004. Prior to the sentencing hearing, a psychological report on Schweitzer prepared by Dr. Thomas Hustak, a forensic psychologist, was submitted to the trial court. The trial court also had before it a pre-sentence investigation report, victim impact statements and several letters from family and friends of Schweitzer in support of him including letters from his mother and father.
 {¶ 7} At the sentencing hearing, Bowsher and his parents made statements to the trial court as did Schweitzer. Additionally, Dr. Hustak testified that Schweitzer suffered from borderline personality disorder which was a mitigating factor in his commission of the crimes he pled guilty to.
 {¶ 8} After weighing all of the information presented at the sentencing hearing, the trial court sentenced Schweitzer to a seven-year prison term for Felonious Assault, an eight-year prison term for Aggravated Burglary and an eleven-month prison term for Possession of Criminal Tools. The trial court ordered the seven-year and eight-year sentences to run consecutively and the eleven-month term to run concurrently for an aggregate prison term of fifteen years.
 {¶ 9} It is from the imposition of sentence that Schweitzer now appeals and sets forth five assignments of error for our review.
 ASSIGNMENT OF ERROR NO. I The trial court erred and violated the Appellant-defendant's right todue process of law by imposing a sentence based upon the court creatingits own psychological opinion as to the effect of theAppellant-defendant's diagnosed mental illness, borderline personalitydisorder, upon his actions in committing the crimes.
 {¶ 10} At the outset, we note that each of Schweitzer's assignments of error allege defects in the imposition of the aggregate fifteen-year prison term in relation to his diagnosed personality disorder. Pursuant to R.C. 2953.08, our review of felony sentencing is de novo. In relevant part, R.C. 2953.08(G) provides that a reviewing court may modify a felony sentence if it finds, by clear and convincing evidence, that the record does not support the sentence or that the sentence is otherwise contrary to law. As required by R.C. 2953.08(F), our review of the record includes any presentence, psychiatric, or other investigative report submitted to the court in writing prior to the imposition of sentence, as well as any oral or written statements made to or by the court at the sentencing hearing.
 {¶ 11} In the first assignment of error, Schweitzer alleges error in the trial court's conclusions, resulting from the trial court's own "diagnosis" of Schweitzer's condition. Particularly, Schweitzer argues that the trial court relied on its own opinion in concluding that a person with borderline personality disorder is in control of his decisions and can decide whether or not to commit crime. Schweitzer alleges that the court ignored the opinion of the forensic psychologist and that he was prejudiced by the trial court's failure to consider the mitigating testimony of Dr. Hustak.
 {¶ 12} Although "a sentencing court must consider all evidence of mitigation, it need not discuss each factor individually." State v.Phillips (1995), 74 Ohio St.3d 72, 102. Additionally, the fact that mitigation evidence is admissible does not automatically mean that it must be given any weight. State v. Steffen (1987), 31 Ohio St.3d 111, paragraph two of the syllabus; State v. Mitts (1998), 81 Ohio St.3d 223,235. In imposing sentence, the assessment of and weight given to mitigating evidence are matters within the trial court's discretion.State v. Lott (1990), 51 Ohio St.3d 160, 171. Even when a trial court assigns no value in mitigation, the weight to assign a given factor is a matter for the discretion of the individual decision-maker. See State v.Fox (1994), 69 Ohio St.3d 183, 193.
 {¶ 13} At the sentencing hearing, the trial court made the following findings:
This is a tragedy. This is a young man who had a good family who'ssitting back there kicking themselves saying, "what did I do wrong?" andthey didn't. And they didn't. This is a young man, who as an adult, hasdemonstrated that he has a personality disorder, but in a personalitydisorder the person with it chooses their path, unlike some otherdisorders where there is no control, unlike other disorders where thereare excuses. This is just a matter of blaming others when, in fact, theperson who is responsible is the one in control. I am unwilling to waitfor more bodies to be laying around bleeding to push those points up onsome scale.
 {¶ 14} Schweitzer argues that these conclusions by the trial court contravened the opinion of Dr. Hustak as well as the other medical evidence that was introduced. In reviewing the evidence presented, however, we find medical evidence which supports the trial court's statement.
 {¶ 15} Specifically, Dr. Hustak reported that just prior to the stabbing of Bowsher, Schweitzer stated that his "heart was pounding," he was sweating, his "teeth and fists were clenched," and he was thinking that he had to "protect" Cox. Dr. Hustak opined that Schweitzer's need to "protect" Cox seemed more than anything to be a rationalization for the assault after the fact rather than a delusionally-driven belief about what occurred before the assault. Further, Dr. Hustak reported that Schweitzer did not claim any "voices" instructed him to hurt Bowsher or Cox, that he was actively hallucinating when the assault took place or that symptoms of hallucinations caused him to initiate the assault. Dr. Hustak also reported that patients who exhibit symptoms similar to those of Schweitzer have a history of acting out and/or self-destructive behavior from a combination of impulsivity and poor judgment.
 {¶ 16} Additional evidence was introduced that supports the trial court's conclusion that Schweitzer was in control. The record reveals that Schweitzer went to Wal-Mart in Celina, Ohio, approximately 45 minutes prior to the assault on Bowsher and Cox and purchased the 10-inch buck knife that was used to stab Bowsher. Moreover, the psychological report prepared by the Forensic Psychiatry Center for Western Ohio and received by the trial court indicated not only that Schweitzer was competent but also that Schweitzer was likely malingering and was attempting to exaggerate his psychopathology. Although Dr. Hustak attempted to explain the conclusions made in this earlier report, the evidence was, nonetheless, a part of the record.
 {¶ 17} After review, we are not inclined to agree that the trial court made its own "diagnosis" of Schweitzer and relied on that diagnosis in sentencing him. Rather, we find that the trial court drew conclusions about Schweitzer's personality disorder from the information and multiple diagnoses which were in evidence. Therefore, we cannot say that the trial court ignored the report of Dr. Hustak or failed to consider the mitigating evidence.
 {¶ 18} Schweitzer's first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. II The trial court erred by finding that the failure to show genuineremorse was a significant factor that the offender would likely commit afuture crime, when uncontroverted expert testimony based on extensivepsychological testing showed that the appellant suffered from borderlinepersonality disorder, a mental illness whose symptoms, as well as thetreating medications, result in the patient showing a lack of remorse.
 {¶ 19} In his second assignment of error, Schweitzer argues that the trial court misinterpreted the report of Dr. Hustak concerning the likelihood of his recidivism. Schweitzer asserts that, due to the characteristics of his personality disorder and the medication he takes for the disorder, he is prevented from feeling remorse. Therefore, he contends that the trial court should have considered the absence of genuine remorse as a mental condition, a mitigating factor, rather than a basis for finding he was likely to commit a future crime.
 {¶ 20} In his report, Dr. Hustak stated the following:
Mr. Schweitzer demonstrates the symptoms characteristic of apersonality disorder which by definition is a characterological andmaladaptive way of behaving, thinking, and feeling. In many ways he stillappears to be in denial about what led him to the point of attackingsomeone else. Simply put, he just wants it to `go away.'
Dr. Hustak continued by stating that the medication that Schweitzer had been prescribed to stabilize his mood may cause him to "appear to be somewhat less remorseful" because his mood is now more stabilized. Dr. Hustak was careful to note that the medication does not, in and of itself, prevent the experience of remorse, but the control of mood swings can tend to make a person less emotional in general and Schweitzer may appear, therefore, to be less remorseful.
 {¶ 21} Dr. Hustak further reported Schweitzer's performance on the HARE Psychopathy Checklist, which evaluates a person's functioning in regard to future acting out on two main factors. Factor 1 involves "selfishness, callousness and remorseless use of others." Factor 2 involves "chronically unstable, antisocial and socially deviant lifestyles." Dr. Hustak explained that a score of 30 or higher can be used to classify individuals as psychopaths and that research shows that there is no discernible treatment that will change their behavior.
 {¶ 22} Schweitzer produced a total score of 28 on the test. He scored relatively low on Factor 2, but his score on Factor 1 "suggests that he is in the 92.5 percentile for male prison inmates[1] * * * on Factor 1 he demonstrates a high probability of callous and remorseless use of others, frequently seen in persons with psychopathy."
 {¶ 23} Upon review of Dr. Hustak's report, we find that the trial court herein made a finding that was consistent with the testimony presented. Dr. Hustak testified that as a result of Schweitzer's illness, he was less likely to experience remorse for his actions. Although that factor, which favors incarceration, may be the result of circumstances beyond Schweitzer's control, it is, nevertheless, pertinent to the determination of Schweitzer's likelihood of recidivism. The statute, for better or worse, does not differentiate the weight to be given to recidivism factors that are organically, or psychologically, inherent.
 {¶ 24} Schweitzer's second assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. III The trial court erred by finding that pursuant to ORC 2929.12, thelikely to commit future crimes factors outweigh the factors indicatingthat the offender is not likely to commit future crimes.
 {¶ 25} In this assignment of error, Schweitzer argues that not only should his lack of genuine remorse not weigh against him in determining recidivism due to his personality disorder, but also that other factors favoring recidivism do not apply to his circumstances. Schweitzer contends that the trial court erred in determining that the "likely to offend" factors weighed in favor of Schweitzer committing future crime.
 {¶ 26} In determining this assignment of error, we are mindful that a trial court has broad discretion in fashioning a sentence that complies with the purposes and principles of felony sentencing set out in R.C.2929.11. State v. Foster, 150 Ohio App.3d 669, 2002-Ohio-6783. In exercising that discretion the trial court must consider the seriousness and recidivism factors in R.C. 2929.12, and may consider any other relevant factor. R.C. 2929.12(A). As we stated herein, our standard for reviewing a trial court's sentencing decision is not whether the trial court abused its discretion. Instead, we may not increase, reduce or otherwise modify the sentence, or remand the matter for resentencing, unless we clearly and convincingly find that the record does not support the sentencing court's findings under the relevant statute or that the sentence is otherwise contrary to law. R.C. 2953.08(G)(2)(a) and (b).
 {¶ 27} R.C. 2929.12(D) lists factors that the sentencing court shall consider as indicators that the offender is likely to commit future crimes. These factors are:
(1) At the time of committing the offense, the offender was underrelease from confinement before trial or sentencing, under a sanction * ** or under post-release control * * *.
 (2) The offender previously was adjudicated a delinquent child* * * or the offender has a history of criminal convictions.
 (3) The offender has not been rehabilitated to a satisfactory degreeafter previously being adjudicated a delinquent child * * * or theoffender has not responded favorably to sanctions previously imposed forcriminal convictions.
 (4) The offender has demonstrated a pattern of drug or alcohol abusethat is related to the offense, and the offender refuses to acknowledgethat the offender has demonstrated that pattern, or the offender refusestreatment for the drug or alcohol abuse.
 (5) The offender shows no genuine remorse for the offense.
 {¶ 28} R.C. 2929.12(E), on the other hand, lists factors indicating whether a defendant is unlikely to commit future crimes. These include:
(1) Prior to committing the offense, the offender had not beenadjudicated a delinquent child.
 (2) Prior to committing the offense, the offender had not beenconvicted of or pleaded guilty to a criminal offense.
 (3) Prior to committing the offense, the offender had led a law-abidinglife for a significant number of years.
 (4) The offense was committed under circumstances not likely to recur.
 (5) The offender shows genuine remorse for the offense.
 {¶ 29} Although Schweitzer argues that none of the "likely to offend" factors are applicable to him, we have already found herein that his lack of remorse was a significant factor for the court to consider. Further, the record reveals that the lack of remorse was not the only concern about Schweitzer's likelihood of re-offending. Although Dr. Hustak noted that Schweitzer had not previously been convicted of a criminal offense and it was possible that this incident was a one-time occurrence, he also opined that it was clear Schweitzer had difficulties in relationships. Dr. Hustak stated, in pertinent part:
[Schweitzer] becomes involved in those relationships to the point wherehe becomes obsessively attached to them, causing at least onerelationship in the past to fail because of that problem and the mostrecent occurring as a result of being rebuked by a young girl who becamethe object of his affectional [sic] advances. Consistently in the past hehas been involved in intense relationships that have failed with promisesof long-term commitments and the collapse of those relationships whichcaused him feelings of abandonment. The danger area for this individual,therefore, occurs when he becomes intensively involved in a relationshipwith young women and when he feels like he can float from one sexuallypromiscuous relationship to another. This is the time when he is atgreatest risk to reoffend and, because of this, any type of treatmentoffered would need to monitor his relationships very carefully so as toprevent further problems.
 {¶ 30} We find that Dr. Hustak's conclusions and opinions regarding Schweitzer's likelihood of future criminal activity indicate that he would be in danger of re-offending should he become involved in another relationship. We hold that the trial court appropriately considered that factor, as well as his lack of remorse, in determining that Schweitzer was more likely than not to recidivate. Additionally, we do not find that the record clearly and convincingly fails to support the trial court's determination.
 {¶ 31} Accordingly, Schweitzer's third assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. IV The trial court erred by sentencing the defendant to consecutivesentences in that the ORC 2929.14(E)(4) category findings are not basedon reasons supported by factual evidence in the record and are notclosely related to the category findings.
 {¶ 32} Before consecutive sentences may be imposed, the trial court is required to make several findings in accordance with R.C. 2929.14 and R.C. 2929.19. First, the sentencing court must find that consecutive sentences are "necessary to protect the public" or to "punish the offender." R.C. 2929.14(E)(4). Second, the court must find that consecutive sentences are "not disproportionate to the seriousness of the offender's conduct and to the danger he poses to the public." Id. Finally, the trial court must find the existence of one of the three following circumstances:
(a) the offender committed one or more of the multiple offenses whilethe offender was awaiting trial or sentencing * * * or was underpost-release control for a prior offense;
 (b) * * * the harm caused by * * * the multiple offenses was so greator unusual that no single prison term for any of the offenses committedas part of a single course of conduct adequately reflects the seriousnessof the offender's conduct;
 (c) the offender's history of criminal conduct demonstrates thatconsecutive sentences are necessary to protect the public from futurecrime by the offender.
 {¶ 33} In addition to these findings, the trial court must give its reasons for imposing consecutive sentences. See R.C. 2929.19(B)(2)(c). Therefore, the trial court must not only make the required findings under R.C. 2929.14(E)(4), but must also substantiate those findings by "identifying specific reasons supporting the imposition of consecutive sentences." State v. Brice (March 29, 2000), 4th Dist. No. 99CA21.
 {¶ 34} Schweitzer argues, in this assignment of error, that the trial court erred in imposing consecutive sentences upon him. Although Schweitzer acknowledges that the trial court made the required findings, he asserts that the findings were not supported by reasons that accurately reflected the evidence presented.
 {¶ 35} At the sentencing hearing, the trial court reiterated the details of Schweitzer's assault on Bowsher and Cox. The trial court found that Schweitzer posed such a risk to the public that consecutive service of his sentences was necessary. The trial court explained that Schweitzer was a risk to commit future crime because he lives in a sort of "fantasy land," getting in over his head in relationships with girls who hardly know him and then becomes dangerous and angry when he is rejected. The trial court noted that Schweitzer's anger and rage built after each break-up finally culminating in the instant incident. The trial court also found that the assault on Bowsher and Cox had been thought out. It commenced with Schweitzer's purchase of the buck knife and continued with Schweitzer going to Cox's house and forcing his way in. The trial court stated that Schweitzer had a lot of time to change his mind, but he failed to do so. The trial court also found Schweitzer caused serious harm to his victims. Cox suffered psychological harm, and Bowsher suffered both psychological and physical harm.
 {¶ 36} Based on the evidence before us, we find that the record supports the trial court's findings that consecutive sentences were necessary to protect the public and to punish the appellant and are not disproportionate to Schweitzer's conduct considering the harm done. Further, we find that the trial court identified specific reasons, apart from the required findings and gleaned from the record, to support the imposition of consecutive sentences. We, therefore, hold that the imposition of consecutive sentences is supported by the record.
 {¶ 37} Schweitzer's fourth assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. V The trial court erred by denying the Appellant-defendant's due processright to a fair sentencing hearing where he was prevented from presentinginformation relevant to the imposition of sentence by a court that haddisplayed an inflexible predisposition to consecutive sentences.
 {¶ 38} In his fifth assignment of error, Schweitzer alleges that due to multiple acts by the sentencing court he was denied a fair sentencing hearing. In particular, Schweitzer asserts that the trial court minimized the testimony of Dr. Hustak and rushed through his defense counsel's questioning of the doctor, prevented his mother and father from being called as witnesses at sentencing and took Dr. Hustak's report out of context and misrepresented his opinions. Further, Schweitzer contends that due to the lack of delay between the end of the presentation of evidence and the trial court's entry of decision, the decision seemed to have been pre-determined.
 {¶ 39} With regard to the failure to allow Schweitzer's mother and father to make statements, R.C. 2929.19 provides that at the sentencing hearing, "the offender, the prosecuting attorney, the victim or the victim's representative * * * and, with the approval of the court, any other person may present information relevant to the imposition of sentence in the case." Emphasis added. However, there is no requirement that the trial court must allow other persons with an interest in a defendant's sentencing to make a statement. Moreover, it is apparent from the record that the trial court had received written statements from both individuals regarding the imposition of sentence upon Schweitzer.
 {¶ 40} With regard to Schweitzer's other contentions, we cannot conclude that Schweitzer was denied due process. We do not find that the trial court acted improperly in taking the testimony of Dr. Hustak or in the conclusions made based on the doctor's report and in-court statements. Nor can we find impropriety in the manner in which the trial court presented its decision following the close of evidence. Prior to the sentencing hearing, the trial court had time to review the numerous reports from psychologists, including Dr. Hustak, many letters from family and friends of Schweitzer, pre-sentence reports, and victim impact statements that had been presented to the court upon which to base its sentencing decision.
 {¶ 41} After considering all of the arguments herein and the record in its entirety, we hold that Schweitzer has not shown, by clear and convincing evidence, that his sentence is not supported by the record or is contrary to law.
 {¶ 42} When imposing a sentence, a trial court is vested with the discretion to determine the most effective way to comply with the purposes and principles of sentencing. R.C. § 2929.12. Although this case presents some difficult facts and circumstances, the trial court determined that the most effective way to comply with the sentencing purposes and principles was to impose a fifteen-year prison term for the crimes that Schweitzer committed. From the evidence presented, we do not find that the trial court erred in that decision.
 {¶ 43} Schweitzer's fifth assignment of error is overruled.
 SUPPLEMENTAL ASSIGNMENT OF ERROR NO. I The sentences imposed upon Appellant must be vacated because they wererendered in violation of Appellant's Sixth Amendment right to trial byjury and Article I § 10 of the Ohio Constitution. Specifically,sentencing Appellant to more than the minimum sentence on charges ofaggravated burglary, felonious assault and possessing criminal toolsviolates the United States and Ohio Constitutions. Sentencing Appellantto consecutive sentences on the charges of aggravated burglary andfelonious assault violate the same United States and Ohio Constitutions.
 {¶ 44} Following the submission of his appeal, Schweitzer filed a motion to permit supplemental briefing. We subsequently granted the motion, and this assignment of error followed.
 {¶ 45} In this supplemental assignment of error, Schweitzer argues that his sentence was rendered in violation of Blakely v. Washington
(2004), 542 U.S. 296. He contends that because the sentencing court, not a jury, made the findings necessary to sentence him to more than the minimum prison term and to consecutive sentences, his sentence violates the Sixth Amendment to the United States Constitution and the Ohio Constitution and asserts that the Blakely decision requires his sentence to be vacated.
 {¶ 46} In Blakely, the Court further defined a principle announced inApprendi v. New Jersey (2000), 530 U.S. 466. In Apprendi, the Court held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." Id. at 490. The Court defined the relevant "statutory maximum" in Blakely,
determining that it is the "maximum a judge may impose based solely on the facts reflected in the jury verdict or admitted by the defendant." Id. at syllabus.
 {¶ 47} This court, however, has determined that Blakely is not applicable to Ohio's statutory scheme. See State v. Trubee, 3d Dist. No. 9-03-65, 2005-Ohio-552. In Trubee, we recognized the differences between the judicial fact-finding found unconstitutional in Blakely and the determinations that an Ohio sentencing court must make before imposing a sentence under Ohio law. We determined:
[u]nlike the Washington statute, the sentencing "range" created byR.C. 2929.14(B) is not "the maximum sentence a judge may impose solely onthe basis of the facts reflected in the jury verdict or admitted by thedefendant." Blakely, 124 S.Ct. at 2537. Rather, it limits a defendant'spotential sentence within the statutory range created by R.C. 2929.14(A).Trubee, id. at ¶ 23.
 {¶ 48} Even if the reasoning of Blakely were applicable to Ohio felony sentencing, we do not find that Schweitzer's sentence is in conflict with that decision. The Apprendi and Blakely holdings concern the limitations for punishment for one conviction and have no application as to whether sentences for multiple crimes should be served concurrently or consecutively. In the absence of such a holding, we find that the trial court's determination that appellant's sentences should be served consecutively was not a violation of Apprendi or Blakely.
 {¶ 49} Schweitzer's supplemental assignment of error is hereby overruled.
 {¶ 50} Having found no error prejudicial to appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
Rogers and Shaw, JJ., concur.
[1] Meaning that only 7.5% of male prison inmates score higher than Schweitzer on Factor 1, in indicating "selfishness, callousness and remorseless use of others."